FILED
AUG - 1 2017
Nora Paul
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**UNITED STATES OF AMERICA** : **CRIMINAL NO. 7:16-CR-39-(HL)-9**

**v.**

**MARVIN DUMAS**

# PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and MARVIN DUMAS, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not



be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c) Federal Rules of Criminal Procedure, as follows:

(A)   The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One (1) of the Information which charges defendant with conspiracy to distribute cocaine, in violation of Title 21, United States Code, Section 846 i/c/w Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

(B)   That defendant fully understands that defendant's plea of guilty to Count One (1) of the Superseding Information, as outlined above, will subject defendant to up to twenty (20) years



confinement, a $1,000,000.00 fine, or both, three (3) years' supervised release and a $100.00 mandatory assessment fee.

(C) The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office. The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline -range.

(D) The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.



(G) Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence. Once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or any other court review of Defendant's sentence, and the Defendant's waiver includes any collateral attack on the District Court's sentence, except that the Defendant shall retain the right to bring a claim of ineffective assistance of counsel. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the Defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

(H) The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney appeals the defendant's sentence pursuant to this statute, the defendant is released from defendant's waiver of defendant's right to appeal altogether.

(I) The defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.



(J) The defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of any such biological evidence pursuant to Title 18, United States Code, Section 3600 in an attempt to prove defendant's innocence. The defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with defendant's counsel, and knowingly and voluntarily waives the right to have such DNA testing performed on the biological evidence in this case. Defendant fully understands that because defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

(K) The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant. The Government will move to dismiss defendant from the pending indictment after sentencing.

(B) If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court



that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.



Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

STIPULATION OF FACTS:

On August 29, 2014, a valid, court-ordered wire intercept was initiated on telephones utilized by Andrew Carter and Lataris Waters to conduct illegal drug trafficking activities for the Carter/Martinez drug trafficking organization, which was acquiring multi-kilogram quantities of cocaine. Through investigation into the Carter/Martinez organization, Marvin Dumas was identified as a purchaser of cocaine from Andrew Carter for further distribution.

On September 11, 2014, in intercepted call 3146, Marvin Dumas called Andrew Carter and requested "five" today or tomorrow. The following day, on September 12, 2014, in call 3325, Marvin Dumas informs Andrew Carter he is waiting on him. Andrew Carter states he is sending someone and confirms Marvin Dumas has requested "five." Shortly thereafter, in intercepted call 3361, Andrew Carter calls Marvin Dumas telling him his sister, Kayla Carter, and his mother, Sarah Carter, are arriving in a white Tahoe. Marvin confirms he is waiting on them. In this call, Andrew Carter identifies Marvin Dumas by name. In a similar pattern on September 15, 2014, Marvin Dumas calls Andrew Carter requesting "six."

In a debrief interview on February 3, 2015, Andrew Carter stated he has known Dumas for a long time. Dumas would normally get nine ounces of cocaine at a time. In September 2014, Dumas received nine ounces of cocaine approximately five times. Prior to September 2014, Dumas received five ounces of cocaine every two days. Carter believed that he has supplied Dumas with five ounces of cocaine over twenty times in 2014.



Andrew Carter also identified the contact "Marv" and associated telephone number saved in the telephone seized from his person at his arrest on September 25, 2014, as belonging to Marvin Dumas. Additionally, Marvin Dumas was intercepted during the course of the investigation using this telephone number to purchase cocaine.

Agent Luke also reviewed with Andrew Carter several drug ledgers that were recovered from Carter's residence at 6147 Futch Road in March and April of 2014. Carter indicated that the figures on a page indicated either cocaine sold or money owned from partial payment of cocaine supplied to different individuals. Carter identified the individual notated as "Marv" as Marvin Dumas.

In a debrief interview on June 24, 2015, Diamond Carter included Dumas in the list of their main customers. Diamond Carter stated she had taken cocaine to Marvin on three occasions and would obtain the money from this cocaine at the time of delivery.

In a debrief interview on August 14, 2015, Ken Mitchell stated that Dumas was obtaining cocaine from Andrew Carter, and he had observed Dumas meeting with Andrew Carter. Andrew Carter had also informed Mitchell he was meeting with Dumas after leaving Mitchell's house. Mitchell stated that when he did not have any cocaine he sent customers to see Dumas to obtain cocaine. Mitchell believed he had brokered approximately ten half-ounce to two-ounce transactions with Dumas.

In a debrief interview on October 21, 2015, Maurice Carter stated he supplied Dumas with three ounces of cocaine approximately ten times. Maurice Carter was aware Dumas was also obtaining cocaine from Andrew Carter in 2013 and 2014.

In a debrief interview on October 29, 2015, Lataris Waters indicated she had picked up money from Dumas on four to five occasions totaling anywhere from $2,000 to $3,000 on each occasion.



These meetings occurred at Dumas' residence located on South Central Avenue in Tifton, Georgia across from the Liberty Store and other public places.

Pursuant to U.S.S.G. §2D1.1, the Government and Defendant stipulate and agree the quantity of cocaine attributable to Marvin Dumas is at least 2 kilograms but less than 5 kilograms of cocaine. Defendant reserves the right to present evidence regarding the quantity of cocaine attributable to him at a sentencing hearing.

(8)

ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 1 day of August, 2017.

G.F. PETERMAN, III.
UNITED STATES ATTORNEY

BY: ______________________
JULIA C. BOWEN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 046709



I, MARVIN DUMAS, have read this agreement and had this agreement read to me by my attorney, ALFREDA SHEPPARD, have discussed this agreement with my attorney and I fully understand it and agree to its terms.

MARVIN DUMAS
DEFENDANT

I, ALFREDA SHEPPARD, attorney for defendant, ALFREDA SHEPPARD, have explained the superseding information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

ALFREDA SHEPPARD
ATTORNEY FOR DEFENDANT

